## ASA VICKERIE *vs.* ASA BUSWELL.

Three persons, as tenants in common, owned land on which was a mill, carried by placing a dam across a brook, with all the land covered by the water of the pond thus flowed. After the mill and mill-dam had stood many years, they made partition of this and other adjoining lands by mutual releases, assigning the mill to the respondent in a process for flowing, and certain land including a portion of that covered by the mill-pond to the complainant. In the release to the complainant were these words; "Brook to remain for the use of the mills, as heretofore, forever." *It was held*, that the respondent was entitled to flow the land of the complainant, without payment of damages, to the extent *that it had been usually flowed* by the previous dams.

THIS case was a complaint under the statute, for flowing the complainant's land in *Solon*, by means of a dam erected by the respondent for the purpose of working his mill. The respondent claimed the right to flow the land without payment of damages. He proved, that the land flowed, with other land adjoining, was once owned in common and undivided by the parties and one *Chase*, that, on *March* 11th 1824, partition was made by mutual releases; and that in the release from the respondent and *Chase* to the complainant, under which he holds in severalty, is the following reservation. "Brook to remain for the use of the mills, as heretofore, forever." It was proved by the respondent, that between the years 1779 and 1793 a dam was erected about fifteen rods above the one now existing, which occasions the flowing complained of; that this first dam was removed in about 12 years, and in 1805 another was built on or near the site of the present dam; that in 1831 the second dam was carried away, and the present one erected soon after; that the first was higher, than the two subsequent dams, and flowed more land; that the dam of 1805 was higher and flowed more land, when first erected, than it did immediately previous to its removal; and that for sometime it was depressed in the centre, but that the wings were as high as the dam now existing. It did not appear at what time the depression took place. The complainant offered evidence tending to prove, that the dam of 1805, for several years before its removal, flowed less than the present, and that a portion of the land cultivated, and which was good tillage land in 1828, was overflowed by the present dam, and that the water was, in the opinion

of witnesses, about a foot higher in the mill-pond after the erection of the present dam, than during the latter part of the existence of the dam of 1805; and that this higher elevation caused the damages complained of; that for eighteen years past, the comparative elevation of the water, as raised by the present dam, was higher than as raised by the dam of 1805; and that within that time, the water was at no time raised so high by the dam of 1805, as by the present one.

The counsel for the complainant contended:

1. That the reservation in the release gave no right to flow the lands of the complainant without compensation, but only the right to use the water for the mill.

2. That the reservation gave no right to flow more of the complainant's land, than was flowed at the time of the execution of the release.

3. That the right, which the complainant had in the land before the partition, remained, as regarded the brook and the flowing, unimpaired, and that the reservation extended no farther, than to preserve to the respondent and *Chase* the rights therein, which they previously had.

*Weston C. J.* instructed the jury, that the reservation did embrace the right to flow without remuneration, as well as the right to use the water; that if the water was not raised higher by the present dam, than it was by the first, during its continuance, and by the second at the time of its erection, they would find a verdict for the respondent; that the complainant's receiving the release with the reservation, and giving his own, was relinquishing all the right to object which he anciently might have had before the partition.

The jury returned a verdict for the respondent, which was to be set aside, if the instructions of the Judge were wrong.

*Tenney,* for the complainant, argued in support of the three points made at the jury trial. Under the first he cited *Angel on Watercourses,* 65, 70, 15; *Howard* v. *Wadsworth, 3 Greenl.* 471.

Under the second. *Angel on Watercourses,* 48; 17 *Mass. R.* 289.

*Wells,* for the respondent.

The operation of the reservation was to continue to the respondent the same right to flow the water, without payment of damages, which had been appropriated to the mill before that time. And the course.taken was proper to carry such intention into effect. *Emery* v. *Chase,* 5 *Greenl.* 232.

By the partition the mill was set off to one party, with the right to keep up the pond of water to carry it without payment of damages. The damages were paid then by the other property assigned to them. The obvious intention was, that the respondent should have the same privilege of water, which the whole three had appropriated to it, when they erected their dams, and not in the lowest state of water, when the dam was decayed and partially broken down.

The action was continued, and the opinion of the Court afterwards drawn up by

WESTON C. J. — By construction of law, the owner of land bounded upon a brook or stream of water, goes to the thread of the stream. But he may accept a deed, in which there is reserved or secured to his grantor an easement or privilege, in the premises granted. The brook in question had been appropriated, to raise a head of water for the use of the mills, for more than thirty years, prior to the release, under which the complainant holds. In that release are these words, " brook to remain for the use of the mills, as heretofore, forever."

If these words had not been in, the complainant would have had no right to divert the brook from the respondent's mills. These words must have had some meaning. Some beneficial interest was intended to be secured to the respondent, as the owner of the mills. When we apply the language to the subject matter, we think the meaning cannot be mistaken. The respondent was to have the same use of the brook for his mills, as had " heretofore" been enjoyed. It was to remain as before. Its volume had been for many years artificially increased, for the use of the mills ; and so it was to remain forever. The enjoyment of the property released to the complainant, is to that extent qualified. If there had been reserved for the use of one or

both the releasors, the privilege of cutting timber, upon a definite portion of the premises released, or a right of way, such reservation would have been good. In the present case, the soil passed to the complainant, the respondent reserving the right to cover a portion of it with water, as had been before done, for the benefit of his mills.

If there is any technical difficulty in giving effect to the manifest intention of the parties, in the clause under consideration, as a reservation, the complainant may be regarded as estopped, by his acceptance of the deed, under which he claims, to demand damages for keeping the head of water in the brook as before, or as evidence of a license to permit the respondent to flow, without payment of damages. The brook was not to remain as it then was, at the time the release was executed, when the centre of the dam had become depressed by decay, or from other causes. It was to remain for the use of the mills, "as heretofore," plainly embracing a former period when the dam was in a finished state. When that was carried away, and it became necessary to rebuild, we are of opinion, that upon a just construction of the clause, the respondent had a right to elevate the new dam, as high as the former one was, before its centre was depressed. He would thus use the water, and keep the brook in the state it formerly had been, for the use of the mills. And this is allowing him elevation enough, to justify the flowing complained of, without resorting to the state of things, in the time of the first dam, when a still greater head of water was raised.

The opinion of the Court is, that the presiding Judge was justified, in withholding the instructions requested, and that those given, were substantially correct.

*Judgment on the verdict.*